**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CIRCLE STAR INSURANCE COMPANY, A RISK RETENTION GROUP,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **SAID NURU, SAF-T TRANSPORTATION, INC., ALEXIS MARTINEZ, JOANNE COZZOLINO, GARRISON PROPERTY & CASUALTY INSURANCE COMPANY,** | § | **CIV. ACTION NO. 3:26-CV-7-N** |
| **Defendants.** | § | |

**APPENDIX IN SUPPORT OF PLAINTIFF CIRCLE STAR INSURANCE COMPANY, A RISK RETENTION GROUP'S MOTION FOR SUMMARY JUDGMENT AGAINST SAID NURU**

Plaintiff Circle Star Insurance Company, A Risk Retention Group's Appendix in Support of its Motion for Summary Judgment against Said Nuru.

| Exhibit No. | Description | Appendix Nos. |
|---|---|---|
| 1 | Alexis Martinez's Original Petition in *Alexis Martinez v. Said Nuru, Saft Transportation Inc. and Bismillah Load, Inc.*, DC 24-06763, pending in the 134th Judicial District Court of Dallas County, Texas ("Underlying Lawsuit") | 1-6 |
| 2 | Joanne Cozzolino's First Amended Petition in the Underlying Lawsuit | 7-14 |

| | | |
|---|---|---|
| **3** | Garrison Property & Casualty Insurance Company's Petition in the Underlying Lawsuit, styled *Garrison Property & Casualty Insurance Company v. Said Nuru and Saft Transportation, Inc.*, DC 24-18995, pending in the 191st Judicial District Court of Dallas County, Texas | 15-19 |
| **4** | Order of Consolidation in the Underlying Lawsuit | 20-21 |
| **5** | March 10, 2023 Equipment Lease to Purchase Agreement | 22-31 |
| **6** | Certified Copy of Circle Star's Non-Trucking Liability Policy bearing policy number NTL300449-14799 (issued to Said Nuru for the policy period of March 30, 2023 to March 30, 2024). | 32-56 |
| **7** | Declaration of Margaret Mayhugh, September 14, 2026 | 57-58 |

Respectfully Submitted,

*/s/ Heather N. Blumberg*

**HEATHER N. BLUMBERG**
Texas Bar No. 24074792
HBlumberg@mayerllp.com

**MAYER LLP**
750 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
Telephone: (214) 379-6900
Telecopy: (214) 379-6939

**ATTORNEY FOR PLAINTIFF,**
**CIRCLE STAR INSURANCE COMPANY, A RISK RETENTION GROUP**

**Exhibit 1**

3 CIT/ ES
JURY DEMAND

FILED
5/8/2024 11:34 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Dominique Gadberry DEPUTY

**CAUSE NO.:** DC-24-06763

| | | |
|---|---|---|
| **ALEXIS MARTINEZ;** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| **SAID NURU; SAF-T TRANSPORTATION, INC.; AND BISMILLAH LOAD, INC.;** | § | |
| **Defendants.** | § | 134th **JUDICIAL DISTRICT** |

**PLAINTIFF'S ORIGINAL PETITION**

Plaintiff Alexis Martinez files Plaintiff's Original Petition complaining of Defendants Said Nuru, SAF-T Transportation, Inc., and Bismillah Load, Inc.

## I. DISCOVERY CONTROL PLAN

Discovery is intended to be conducted under Level 3 pursuant to Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE.

## II. RULE 47 PLEADING REQUIREMENTS

As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff counsel states that Plaintiff seek monetary relief of over $250,000 but not more than $1,000,000. The amount of monetary relief actually awarded, however, will ultimately be determined by a jury. Additionally, Plaintiff seeks non-monetary relief by way of a declaratory judgment. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

## III. PARTIES

Plaintiff Alexis Martinez is an individual resident of Mesquite, Dallas County, Texas. Her driver's license number is *****889 and her Social Security Number is ***-**-*992.

Defendant Said Nuru is an individual resident of Richardson, Dallas County, Texas and may be served with process at 609 Woodhaven Place, Richardson, Texas 75081.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

Exhibit 1

Defendant SAF-T Transportation, Inc. is a corporation doing business in Plano, Collin County, Texas and may be served with process by serving its registered agent, Mohammad Abdullah Farooq, at 270 South Watters Road, Suite 184, Allen Texas 75013.

Defendant Bismillah Load, Inc. is a corporation doing business in Plano, Collin County, Texas and may be served with process by serving its registered agent, Mohammad Abdullah Farooq, at 270 South Watters Road, Suite 184, Allen Texas 75013.

## IV. JURISDICTION AND VENUE

The court has jurisdiction over the cause because the amount in controversy is within the jurisdictional limits of the court.

This Court has venue over the parties to this action since the incident complained of herein occurred in Dallas County, Texas. Venue therefore is proper in Dallas County, Texas pursuant to the TEXAS CIVIL PRACTICE & REMEDIES CODE §15.002.

## V. FACTS

This lawsuit arises out of a motor vehicle collision that occurred on or about Thursday, March 30, 2023, on Eastbound 10100 Lyndon B Johnson Freeway/Interstate Highway 635, within the city limits of Dallas, Dallas County, Texas. Plaintiff was operating her vehicle southeast-bound on Eastbound 10100 Lyndon B Johnson Freeway/Interstate Highway 635 and intended to continue straight. Defendant Said Nuru was operating his tractor-trailer behind Plaintiff's vehicle in the same lane and headed in the same direction. Defendant Said Nuru was in the course and scope of his employment with and operating under the Federal Motor Carrier authority of Defendant SAF-T Transportation, Inc. and/or Bismillah Load, Inc. Defendant Said Nuru failed to slow and/or stop and collided hard with the back of another vehicle with such impact that it collided hard with the side of Plaintiff's vehicle. As a result of the collision, Plaintiff was injured and continues to suffer injuries and damages from this incident.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 1**

## VI. CAUSES OF ACTION

### A. NEGLIGENCE – SAID NURU

At the time of the motor vehicle collision, Defendant Said Nuru was operating his vehicle negligently. Specifically, Defendant had a duty to exercise ordinary care and operate his vehicle reasonably and prudently. Defendant breached that duty in one or more of the following respects:

1. Failing to keep such proper lookout and attention to the roadway as a person of ordinary prudence would have kept under the same or similar circumstances;
2. Failing to control the speed of his tractor-trailer;
3. Failing to timely apply the brakes of his tractor-trailer in order to avoid the collision in question;
4. Failing to turn his tractor-trailer in an effort to avoid the collision; and
5. Failing to keep an assured safe distance from Plaintiff's vehicle.

### B. NEGLIGENT ENTRUSTMENT – DEFENDANT SAF-T TRANSPORTATION, INC. AND/OR DEFENDANT BISMILLAH LOAD, INC.

As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. was the owner of the vehicle driven by Defendant Said Nuru. Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. entrusted the vehicle to Defendant Said Nuru. Defendant Said Nuru was unlicensed, incompetent, and/or reckless and Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. knew or should have known that Defendant Said Nuru was unlicensed, incompetent, and/or reckless. Defendant's negligence on the occasion in question proximately caused the collision.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 1**

**C. RESPONDEAT SUPERIOR – DEFENDANT SAF-T TRANSPORTATION, INC. AND/OR DEFENDANT BISMILLAH LOAD, INC.**

Additionally, Plaintiff would show that at the time and on the occasion complained of, Defendant Said Nuru was in the course and scope of employment with Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. thereby making Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. liable under the doctrine of Respondeat Superior.

**D. NEGLIGENCE – DEFENDANT SAF-T TRANSPORTATION, INC. AND/OR DEFENDANT BISMILLAH LOAD, INC.**

Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. negligently hired and retained Defendant Said Nuru. Moreover, Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. failed to properly qualify, train and/or supervise Defendant Said Nuru in order to prevent such collision.

**E. GROSS NEGLIGENCE – DEFENDANT SAF-T TRANSPORTATION, INC. AND/OR DEFENDANT BISMILLAH LOAD, INC.**

In addition to actual damages, Plaintiff seeks to recover exemplary or punitive damages from Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. because Defendant's conduct was of such character as to constitute gross negligence. Defendant's actions in connection with the collision involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and to other users of the public roadways. Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. had actual, subjective knowledge of the risk involved, but nevertheless acted in conscious indifference to the rights, safety, and welfare of others, including the Plaintiff, when Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc. chose to allow Defendant Said Nuru to operate a vehicle under Defendant SAF-T Transportation, Inc. and/or Defendant Bismillah Load, Inc.'s motor carrier authority on public roadways at the time of the collision.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 1**

Each of the foregoing acts and/or omissions, taken together or individually, constitute negligence and each proximately caused the collision and the injuries and damages sustained by Plaintiff.

**VII. DAMAGES**

As a proximate result of Defendants' negligence, Plaintiff suffered extensive injuries and damages. As a result of Plaintiff's injuries, Plaintiff suffered the following damages:

1. Medical expenses in the past and future;
2. Lost wages in the past and loss of earning capacity in the future;
3. Property damage and loss of use of Plaintiff's vehicle;
4. Physical impairment in the past and future;
5. Physical pain and suffering in the past and future; and
6. Mental anguish in the past and future.

**VIII. INTENT TO USE DEFENDANTS' DOCUMENTS**

Plaintiff hereby gives notice of intent to utilize items produced in discovery against the party producing same. The authenticity of such items is self-proven per TRCP 193.7.

**IX. JURY TRIAL**

Plaintiff demands a trial by jury and include the appropriate jury fees.

**X. U.S. LIFE TABLES**

Notice is hereby given to the Defendants that Plaintiff intends to use the U.S. Life Tables as prepared by the Department of Health and Human Services.

**XI. RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer herein, and that upon final hearing thereof, Plaintiff recovers judgment against Defendants for:

1. Plaintiff's past medical expenses, which are reasonable and customary for the medical care received by Plaintiff;

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

# Exhibit 1

2. Plaintiff's future medical expenses;
3. Plaintiff's lost wages in the past and loss of earning capacity in the future;
4. Plaintiff's property damage and loss of use of Plaintiff's vehicle;
5. Plaintiff's physical pain and suffering in the past and future in an amount to be determined by the jury;
6. Plaintiff's mental anguish in the past and future in an amount to be determined by the jury;
7. Plaintiff's physical impairment in the past and future in an amount to be determined by the jury;
8. Interest on the judgment at the legal rate from the date of judgment;
9. Pre-judgment interest on Plaintiff's damages as allowed by law;
10. All costs of court; and
11. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**WITHERITE LAW GROUP, PLLC**

By: /s/James Sung
**JAMES SUNG**
State Bar No. 24097161
james.sung@witheritelaw.com
10440 N. Central Expy, Suite 400
Dallas, TX 75231
(214) 378-6665

**ATTORNEY FOR PLAINTIFF**

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

Certified on 16 Sep 2026 2:33 pm Emeidy Gonzalez

I, FELICIA PITRE, District Clerk of Dallas County, Texas, do hereby certify this instrument to be a true and correct copy of the original as appears of record in my office.

DISTRICT COURT OF DALLAS COUNTY, TEXAS

Hon. Felicia Pitre
District Clerk Dallas County
State of Texas

**Exhibit 2**

FILED
4/7/2026 6:17 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Cassandra Walker DEPUTY

**CAUSE NO. DC-24-06763**

| | | |
|---|---|---|
| ALEXIS MARTINEZ,<br>PLAINTIFF,<br><br>V.<br><br>SAID NURU, SAF-T TRANSPORTATION , INC. AND BISMILLAH LOAD, INC.,<br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br>192ND JUDICIAL DISTRICT<br><br>DALLAS COUNTY, TEXAS |

~And~

| | | |
|---|---|---|
| GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,<br>PLAINTIFF,<br><br>V.<br><br>SAID NURU, SAF-T TRANSPORTATION, INC. AND BISMILLAH LOAD, INC.,<br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br>192ND JUDICIAL DISTRICT<br><br>DALLAS COUNTY, TEXAS |

~And~

| | | |
|---|---|---|
| JOANNE COZZOLINO,<br>PLAINTIFF,<br><br>V.<br><br>SAID NURU, BISMILLAH LOAD, INC., AND GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY D/B/A USAA,<br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br>192ND JUDICIAL DISTRICT<br><br>DALLAS COUNTY, TEXAS |

**PLAINTIFF'S FIRST AMENDED PETITION AND CROSS-CLAIM AGAINST GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME JOANNE COZZOLINO, Plaintiff, complaining of and against SAID NURU and BISMILLAH LOAD, INC., Defendants, and GARRISON PROPERTY AND CASUALTY









CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 2**

INSURANCE COMPANY d/b/a USAA, Plaintiff and Cross-Defendant, and for cause of action would respectfully show the Court the following:

## I. DISCOVERY CONTROL PLAN LEVEL

1.01 Pursuant to Texas Rules of Civil Procedure Rule 190.4, Plaintiff requests that discovery be conducted in accordance with Discovery Control Plan-Level 3.

1.02 Plaintiff seeks monetary relief greater than $1,000,000.

## II. JURISDICTION AND VENUE

2.01 This Court has jurisdiction and venue over the parties and subject matter of these claims because the amount in controversy is within the jurisdictional limits of this Court and all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas.

## III. PARTIES AND SERVICE

3.01 Plaintiff is an individual residing in Dallas County, Texas.

3.02 Defendant, SAID NURU, is an individual who may be served with citation at his residence at 609 Woodhaven Place, Richardson, Texas 75081.

3.03 Defendant, BISMILLAH LOAD, INC., is an entity doing business in the State of Texas and can be served with citation by serving its registered agent Mohammad Farooq, 619 Terrace Drive, Richardson, Texas 75081.

3.04 Defendant Garrison Property and Casualty Insurance Company d/b/a USAA is a foreign corporation doing business in the State of Texas and may be served through its registered agent: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. ISSUANCE OF CITATION IS REQUESTED.

## IV. FACTS

4.01 This lawsuit arises out of a motor vehicle collision that occurred on or March 30, 2023, in Dallas County, Texas. Plaintiff was traveling east on US Interstate Highway 635 in Dallas, Dallas County, Texas, when Defendant SAID NURU, traveling behind Plaintiff, failed to control speed, followed too closely, and collided with Plaintiff. The collision caused the injuries and other damages complained of herein.

4.02 At all material times, Defendant SAID NURU was an employee of Defendant BISMILLAH LOAD, INC., and was acting within the course and scope of such employment.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

## V. NEGLIGENCE

5.01 The collision and the injuries of the Plaintiff were proximately caused by Defendant's negligent, careless, and reckless disregard of his duty to Plaintiff, including the following acts and omissions:

a. Defendant, SAID NURU, failed to keep a proper lookout for the Plaintiff's safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;

b. Defendant, SAID NURU, failed to timely apply the brakes to his motor vehicle in order to avoid the collision;

c. Defendant, SAID NURU, failed to take proper evasive action that would have been taken by a person of ordinary prudence under the same or similar circumstances;

d. Defendant, SAID NURU, failed to remain reasonably attentive to the traffic and other conditions existing on the roadway as a reasonably prudent person would have been under the same or similar circumstances;

e. Defendant, SAID NURU, failed to pay requisite attention as a reasonably prudent driver would;

f. Defendant, SAID NURU, failed to yield the right of way; and,

g. Defendant, SAID NURU, was negligent per se.

## VI. RESPONDEAT SUPERIOR

6.01 At the time of the incident, Defendant SAID NURU was acting under the direction and control of Defendant BISMILLAH LOAD, INC., and was acting within the course and scope of such direction and control. Defendant BISMILLAH LOAD, INC., is liable to Plaintiff for the negligence of Defendant SAID NURU under the common law doctrine of *respondeat superior*.

## VII. STATUTORY EMPLOYEE AND/OR PERMISSIVE USER

7.01 At the time of the incident, Defendant SAID NURU was a Statutory Employee of owner of the entity that owned the vehicle, such that any and all insurance coverage should be afforded to Defendant Said Nuru pursuant to the Federal Motor Carriers Safety Regulations.

7.02 The Statutory Employee Doctrine holds a motor carrier vicariously liable for injuries resulting from a driver's negligent operation when:

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 2**

a. the carrier does not own the vehicle;

b. the carrier operates the vehicle, under an arrangement with the owner, to provide transportation subject to the Commission's jurisdiction; and

c. the carrier does not literally employ the driver.

7.03 Courts have held that the "crusing weight of authority" imposes an absolute duty on an interstate motor carrier when the negligent operation of one of it's leased vehicles injures a member of the public. *Harvey v. F-B Truck Line Co.,* 767 P.2d 254, 260 (Idaho 1987).

7.04 In the alternative, Defendant Said Nuru was a permissive driver of the vehicle in questions such that any and all insurance coverage should be afforded to him under the applicable liability policy.

## VIII. UNINSURED / UNDERINSURED MOTORIST COVERAGE

8.01 At the time of the collision, Plaintiff was a named insured under Policy Number 03530 01 34R 7102 0 with Defendant Garrison Property and Casualty Insurance Company d/b/a USAA. The Insurance Policy was in full force and effect at the time of the collision which forms the basis of this lawsuit and contained Underinsured/Uninsured Motorist benefits in the amount of $1,000,000.

8.02 Pursuant to the Insurance Policy, Defendant Garrison Property and Casualty Insurance Company d/b/a USAA promised to Joanne Cozzolino all sums that Defendant Garrison Property and Casualty Insurance Company d/b/a USAA is legally obligated to pay under the Insurance Policy, including loss caused by bodily injury resulting from the ownership or use of a motor vehicle.

8.03 Plaintiff has complied with all conditions precedent in the policy to bring this claim.

8.04 Plaintiff is full entitled to benefits allowed under the uninsured/underinsured motorist provision of said insurance policy and hereby seeks damages to such provisions from Defendant Garrison Property and Casualty Insurance Company d/b/a USAA.

## IX. DECLARATORY RELIEF AS TO GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY D/B/A USAA

9.01 Pursuant to Civil Practice and Remedies code Chapter 37, Joanne Cozzolino seeks a declaration of the parties rights, statuses, and legal relations under the Garrison Property and Casualty Insurance Company d/b/a USAA policy. Such a declaration is appropriate regardless of whether there has been a breach of contract.

9.02 Plaintiff seeks the following declarations:

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

Exhibit 2

a. Plaintiff Joanne Cozzolino was covered by the Garrison Property and Casualty Insurance Company d/b/a USAA policy at the time of the collision in question with underinsured motorist coverage;

b. The extent and amount of damages that Plaintiff Joanne Cozzolino incurred as a result of the collision; and

c. The extent and amount of damages that Defendant Garrison Property and Casualty Insurance Company d/b/a USAA is contractually obligated to pay Plaintiff Joanne Cozzolino under the Garrison Property and Casualty Insurance Company d/b/a USAA policy.

d.

9.03 Pursuant to Civil Practice and Remedies Code Chapter 37, Plaintiff Joanne Cozzolino seeks an award of all reasonable and necessary attorneys fees and costs as are equitable and just.

## X. DAMAGES

7.01 As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff were caused to suffer severe bodily injuries and damages as set forth below.

a. Reasonable expenses for necessary medical care in the past and future for Plaintiff;

b. Lost wages and/or lost earning capacity, past and future;

c. Pain and suffering in the past and future;

d. Physical impairment in the past and future; and,

e. Defendant SAID NURU's conduct, when viewed objectively, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which the Defendant SAID NURU had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others, including Plaintiff, as such, Plaintiff additionally seeks exemplary damages as allowed by Chapter 41 of the Texas Civil Practice & Remedies Code.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 2**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Defendants be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against the Defendants for damages in an amount within the jurisdictional limits of the Court, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, and such other and further relief to which the Plaintiff may show themselves justly entitled.

Respectfully submitted,
**THE BENTON LAW FIRM**

BY: *__/s/ Jeff Benton__*
**Jeff Benton**
State Bar No. 24050283
1825 Market Center Blvd., Suite 350
Dallas, Texas 75207
Phone (214) 777-7777
Fax (214) 888-1000
E-File: service@jeffbenton.com
**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record pursuant to the *Texas Rules of Civil Procedure* on the 7th day of April, 2026.

__/s/ Jeff Benton______
**JEFF BENTON**

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

# Exhibit 2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeff Benton on behalf of Jeff Benton
Bar No. 24050283
jeff@jeffbenton.com
Envelope ID: 113310857
Filing Code Description: Amended Petition
Filing Description:
Status as of 4/8/2026 8:23 AM CST

Associated Case Party: SAID NURU

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Zopolsky | 24033500 | jzopolsky@gpmz-law.com | 4/7/2026 6:17:17 AM | SENT |
| Brian Bieschke | | bbieschke@gpm-law.com | 4/7/2026 6:17:17 AM | SENT |
| SAID NURU | | NURUSA74@GMAIL.COM | 4/7/2026 6:17:17 AM | SENT |
| Service Email | | Processing@gpmz-law.com | 4/7/2026 6:17:17 AM | SENT |
| James Erdle | | jerdle@gpm-law.com | 4/7/2026 6:17:17 AM | SENT |
| Collin Burns | | cburns@gpm-law.com | 4/7/2026 6:17:17 AM | SENT |

Associated Case Party: GARRISON PROPERTY & CASUALTY INSURANCE COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Karen Guenther | 24084284 | kguenther@clerkinlaw.com | 4/7/2026 6:17:17 AM | SENT |
| Texas Paralegal | | tx.eservice@clerkinlaw.com | 4/7/2026 6:17:17 AM | SENT |
| Jeanette Casey | | jcasey@clerkinlaw.com | 4/7/2026 6:17:17 AM | SENT |
| Veronica Garza | | sgarza@clerkinlaw.com | 4/7/2026 6:17:17 AM | SENT |

Associated Case Party: JOANNE COZZOLINO

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mackenzie Linyard | 24083399 | service@mignuccilawfirm.com | 4/7/2026 6:17:17 AM | SENT |

Associated Case Party: SAF-T TRANSPORATION, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

# Exhibit 2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeff Benton on behalf of Jeff Benton
Bar No. 24050283
jeff@jeffbenton.com
Envelope ID: 113310857
Filing Code Description: Amended Petition
Filing Description:
Status as of 4/8/2026 8:23 AM CST

Associated Case Party: SAF-T TRANSPORATION, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Martha Posey | 24105946 | martha.posey@sargentlawtx.com | 4/7/2026 6:17:17 AM | SENT |
| David Sargent | | david.sargent@sargentlawtx.com | 4/7/2026 6:17:17 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Francine Ly | | fly@dallascourts.org | 4/7/2026 6:17:17 AM | SENT |
| John Brooks | | john.brooks@sargentlawtx.com | 4/7/2026 6:17:17 AM | SENT |
| Bianca Wilkerson | | bianca.wilkerson@sargentlawtx.com | 4/7/2026 6:17:17 AM | SENT |

Associated Case Party: ALEXIS MARTINEZ

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James Sung | | james.sung@witheritelaw.com | 4/7/2026 6:17:17 AM | SENT |

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 3**

CSM No. 35300134-4

FILED
10/23/2024 2:13 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Cynthia Willis DEPUTY

2 CIT ESERVE

CAUSE NO. DC-24-18995

| | |
|---|---|
| **GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,** *Plaintiff* | **IN THE DISTRICT COURT** |
| **v.** | 191st **JUDICIAL DISTRICT** |
| **SAID ADEM NURU AND SAFT TRANSPORTATION, INC.,** *Defendants* | **DALLAS COUNTY, TEXAS** |

## ORIGINAL PETITION

COMES NOW, Garrison Property and Casualty Insurance Company, and files this Original Petition complaining of Said Adem Nuru and Saft Transportation, Inc., and in support thereof would respectfully show the Court as follows:

## DISCOVERY CONTROL PLAN

1. Discovery in this action is intended to be conducted under a Level 1 discovery control plan and Plaintiff affirmatively pleads that this suit is governed by the expedited-actions process pursuant to Texas Rule of Civil Procedure 169.

## PARTIES AND SERVICE

2. Garrison Property and Casualty Insurance Company ("Plaintiff") is a domestic insurance carrier authorized to conduct the business of insurance in the State of Texas by the Texas Department of Insurance.

3. Said Adem Nuru ("Nuru") is an individual residing in Dallas County, and who may be served with process at his usual place of residence 609 Woodhaven Pl, Richardson, TX 75081, or wherever he may be found.

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

Exhibit 3



4. Saft Transportation, Inc. ("Saft") is a corporation lawfully doing business in the State of Texas, whose principal place of business is 4740 14th St Suite T3-SF, Plano, TX 75074, and is licensed as a Federal Motor Carrier, U.S. DOT #3504637, who may be served with process through its Registered Agent, Law Office of John Sims, at 1205 Broadway St., Lubbock, TX 79401.

## VENUE AND JURISDICTION

5. The incident giving rise to this cause of action occurred in this county; consequently, venue is proper in Dallas County, Texas pursuant to Chapter 15 of the Texas Civil Practices & Remedies Code.

6. The Court has jurisdiction over the lawsuit because the amount in controversy is within the jurisdictional limits of this Court.

## SPECIFIC STATEMENT OF RELIEF

7. Plaintiff seeks only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs.

## FACTUAL BACKGROUND

8. On, or about, 3/30/2023, Nuru was operating a motor vehicle ("Subject Vehicle") in the area of the 10100 block of LBJ Fwy near Royal Lane, Dallas, when he, among other things, failed to maintain a proper lookout and failed to maintain control of the Subject Vehicle, causing a collision ("the Collision") with the vehicle of Plaintiff's insured, Joanne E Cozzolino ("Insured"), resulting in a loss of use and fair market

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 3**



value in the amount of $28,678.40, or alternatively, costs in the same sum to repair ("the Loss").

9. While operating the Subject Vehicle, and thus at the time of the Collision, Nuru was an agent and/or employee of Saft acting within the scope of his authority as such agent and/or employee.

10. Insured, and her vehicle, are, and were at all relevant times herein, covered under a policy of insurance issued by Plaintiff; accordingly, after the Collision occurred and after receiving due proof of the Loss, provided by Insured, Plaintiff made payments to, and/or on behalf of, Insured in the said amount pursuant to the aforementioned insurance policy, thereby becoming subrogated to that amount.

## CAUSE(S) OF ACTION AND DAMAGES

### Negligence

11. Nuru owed Insured a legal duty to use ordinary care in the operation of the Subject Vehicle at the time of the Collision; but he breached that duty of care by, among other things, failing to maintain a proper lookout and failing to maintain proper control of the Subject Vehicle, which proximately caused the Collision, and thereby the ensuing Loss to Insured's property.

### Vicarious Liability – Respondeat Superior

12. Insured was injured as a result of Nuru's negligence while he was an employee of Saft and said negligence was committed while Nuru was performing acts within the scope of his employment—that is, the operation of the Subject Vehicle by Nuru was within his general authority; in furtherance of Saft's business; and for the

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 3**



accomplishment of the object for which Nuru was hired, consequently Saft is vicariously liable for Insured's injuries.

**Vicarious Liability – Statutory Employee**

13. At minimum, Nuru was a statutory employee of Saft at the time of the Collision. According to the Federal Motor Carrier Safety Regulations ("FMCSR"), a driver is deemed the statutory employee of the carrier for which he is driving and, through this constructive employment relationship, the carrier may be held vicariously liable for the negligence of the driver. Therefore, Saft is vicariously liable for the negligence of its statutory employee Nuru.

**Damages**

14. Defendants' breach of duty proximately caused injury to Insured that resulted in actual liquidated damages, to which Plaintiff is subrogated and is now seeking.

## CONDITIONS PRECEDENT

15. All conditions precedent to Plaintiff's claims for relief has been performed or has occurred.

## PRAYER

For the foregoing reasons Plaintiff requests that citation issue to Defendants requiring an appearance and answer herein and that upon final trial or other disposition of this lawsuit Plaintiff have and recover judgment against Defendants on the claims above for:

a. actual damages of **$28,678.40**;
b. prejudgment and post judgment interest;
c. all costs of suit; and

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 3**



d. such other relief at law or in equity to which the Court determines Plaintiff may be justly entitled.

Respectfully submitted,
**CLERKIN, SINCLAIR & MAHFOUZ, LLP**

Patrick Clerkin, SBN: 24040702
Roxanna M. Robertson, SBN: 24074648
Karen Guenther; SBN: 24084284
tx.eservice@clerkinlaw.com
2929 N. Central Expressway, Ste. 320
Richardson, TX 75080
O: 469.906.2190 | F: 469.608.8821

****NOTICE: DEFENDANTS, YOU MUST DELIVER THIS IMMEDIATELY TO YOUR INSURER OR THE INSURANCE COMPANY INSURING THE VEHICLE YOU WERE DRIVING AT THE TIME OF THE COLLISION. IF YOU ARE NOT REPRESENTED BY AN ATTORNEY AND WISH TO DISCUSS PAYMENT OF THE DAMAGES, PLEASE CALL OUR OFFICE AT: (469) 906-2190.**

To Defendants, Attorneys and insurers for settlement purposes only – not to be read to the jury: This firm is retained on a contingent fee basis. Trying this lawsuit will not increase our client's attorney fees. If this case falls within the Motor Vehicle Safety Responsibility Act and we settle, we will prepare for your approval a written release or an Agreed Judgment that the Department of Public Safety will accept to lift or prevent the suspension of Defendant's driver's license. In appropriate cases, our client will allow payment in monthly installments or a lump sum of a reduced amount of damages.

**---- WARNING ----**

**YOU ARE REQUIRED, EVEN IF YOU DO NOT HAVE AN ATTORNEY, TO SEND A COPY OF EVERYTHING YOU FILE WITH THE COURT TO CLERKIN, SINCLAIR & MAHFOUZ, LLP, 2929 N. CENTRAL EXPRESSWAY, STE. 320, RICHARDSON, TX 75080, BY FIRST CLASS MAIL OR FACSIMILE TO 469-608-8821. FAILURE TO DO SO MAY HAVE SEVERE CONSEQUENCES. SEE COURT RULES FOR DETAILS.**

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 4**

CAUSE NO. DC-24-06763

| | | |
|---|---|---|
| ALEXIS MARTINEZ,<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | 134TH JUDICIAL DISTRICT |
| SAID NURU, SAF-T TRANSPORTATION, INC., AND BISMILLAH LOAD, INC.<br>Defendants. | §<br>§<br>§ | DALLAS COUNTY, TEXAS |

**ORDER ON DEFENDANT SAID NURU'S UNOPPOSED MOTION TO CONSOLIDATE**

ON THIS DAY came to be considered Defendant Said Nuru's Unopposed Motion to Consolidate ("Motion"), and the Court, having considered the Motion, the authority cited therein, and the agreement of counsel, is of the opinion that the Motion should be GRANTED IN FULL:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant Said Nuru's Motion to Consolidate shall be, and is, GRANTED;

IT IS FURTHER HEREBY ORDERED, ADJUDJED, AND DECREED that the three related cases of *Alexis Martinez v. Said Nuru*, Cause No. DC-24-06763, *Joanne Cozzolino v. Said Nuru*, Cause No. DC-24-21882, and *Garrison Property & Casualty Insurance Company v. Said Nuru*, Cause No. DC-24-18995, shall be, and are, consolidated into one case, pursuant to Texas Rules of Civil Procedure 41 and 174;

IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that the cases of *Joanne Cozzolino v. Said Nuru*, Cause No. DC-24-21882 and *Garrison Property & Casualty Insurance Company v. Said Nuru*, Cause No. DC-24-18995, shall be, and are, transferred to the 134th Judicial District Court of Dallas County, Texas; and

IT IS FINALLY HEREBY ORDERED, ADJUDGED, AND DECREED that all subsequent pleadings, motions, or other papers should be filed in the new consolidated case, *Alexis Martinez, Joanne Cozzolino, and Garrison Property & Casualty Insurance Company v. Said Nuru,*

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 4**

*SAF-T Transportation, Inc., Bismillah Load, Inc.*, Cause No. DC-24-06763, pending in the 134th Judicial District Court of Dallas County, Texas;

SIGNED this ____ day of _______________, 2025.

**4/20/2025 7:49:37 AM**

JUDGE PRESIDING

CERTIFIED TRUE AND CORRECT COPY, HON. FELICIA PITRE, DISTRICT CLERK DALLAS COUNTY, TX

**Exhibit 5**

DEFENDANT'S EXHIBIT Nuru-9

# EQUIPMENT LEASE TO PURCHASE AGREEMENT

**THIS EQUIPMENT LEASE TO PURCHASE AGREEMENT (this "Agreement") dated this**

10 day of March, 2023

**BETWEEN:**

**SAFT TRANSPORTATION**
(the "Lessor")

OF THE FIRST PART

Saft trnsportation inc - AND - Said Nuru

(the "Lessee")

OF THE SECOND PART

(the Lessor and Lessee are collectively the "Parties")

**IN CONSIDERATION OF** the mutual covenants and promises in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the Lessor leases the Equipment to the Lessee, and the Lessee leases the Equipment from the Lessor on the following terms:

**Definitions**

1. The following definitions are used but not otherwise defined in this Agreement:

   a. "Casualty Value" means the market value of the Equipment at the end of the Term or when in relation to a Total Loss, the market value the Equipment would have had at the end of the Term but for the Total Loss. The Casualty Value may be less than but will not be more than the original purchase price of the Equipment.

   b. "Equipment" means 2014 freightliner which has an approximate value of $ ~~27,000~~ 26,000.- . 00 (FM) S.N

**Exhibit 5**

c. "Total Loss" means any loss or damage that is not repairable or that would cost more to repair than the market value of the Equipment.

**Lease**

2. The Lessor agrees to lease with option to purchase the Equipment to the Lessee, and the Lessee agrees to lease the Equipment from the Lessor in accordance with the terms set out in this Agreement.

**Term**

3. The Agreement commences on March 29, 20 23 and will continue on a Weekly basis (the "Term").

**Payments and Deposit**

4. The payment will be paid in installments of $ 1000.00 or more each week, in advance, beginning on April. 7th, 20 23 and will be paid on the Friday of each succeeding week throughout the Term (the "Payment").

5. The Lessee will pay a deposit of $ ~~4000.00~~ 3000.00 (the "Deposit") and upfront amount of $0 before taking possession of the Equipment. The Lessor will refund the Deposit to the Lessee at the end of the Term provided that the Lessee has performed all of the Lessee's obligations under this Agreement.

**Residual Value**

6. The residual value (the "Residual Value") of the equipment is $0.

**Purchasing the Equipment**

7. The Lessee has willingly accepted to purchase the Equipment at the end of the Term by paying the following amounts:

a. the Residual Value of the Equipment; and
b. any fees, taxes, and expenses related to the purchase of the Equipment.

8. After the Lessee has paid all of the costs and fees associated with purchasing the Equipment, the Lessor will return the following amounts, or the remaining portions of these amounts, to the Lessee:



S. N

Exhibit 5

a. the Deposit; and

b. any money received from an insurance claim or action that is not used to repair or replace the Equipment.

Use of Equipment

9. The Lessee will use the Equipment in a good and careful manner and will comply with all of the manufacturer's requirements and recommendations respecting the Equipment and with any applicable law, whether local, state or federal respecting the use of the Equipment, including, but not limited to, environmental and copyright law.

10. The Lessee will use the Equipment for the purpose for which it was designed and not for any other purpose.

11. Unless the Lessee obtains the prior written consent of the Lessor, the Lessee will not alter, modify or attach anything to the Equipment unless the alteration, modification or attachment is easily removable without damaging the functional capabilities or economic value of the Equipment.

Repair and Maintenance of Equipment

12. The Lessee will, at the Lessee's own expense, keep the Equipment in good repair, appearance and condition (as per the standards of FMCSA safety regulations), normal and reasonable wear and tear excepted. The Lessee will supply all parts that are necessary to keep the Equipment in such a state.

13. If the Equipment is not in good repair, appearance and condition when it is returned to the Lessor, the Lessor may make such repairs or may cause such repairs to be made as are necessary to put the Equipment in a state of good repair, appearance and condition, normal and reasonable wear and tear excepted. The Lessor will make the said repairs within a reasonable time of taking possession of the Equipment and will give the Lessee written notice of and invoices for the said repairs. Upon receipt of such invoices, the Lessee will immediately reimburse the Lessor for the actual expense of those repairs.

14. The Lessee may, but is not obligated to, enforce any warranty that the Lessor has against the supplier or manufacturer of the Equipment. The Lessee will enforce such warranty or indemnity in its own name and at its own expense.



S.N

**Exhibit 5**

**Warranties**

15. The Equipment will be in good working order and good condition upon delivery.

16. The Equipment is of merchantable quality and is fit for the purposes it is ordinarily used.

**Loss and Damage**

17. To the extent permitted by law, the Lessee will be responsible for risk of loss, theft, damage or destruction to the Equipment from any and every cause.

18. If the Equipment is lost or damaged, the Lessee will continue paying Rent, will provide the Lessor with prompt written notice of such loss or damage and will, if the Equipment is repairable, put or cause the Equipment to be put in a state of good repair, appearance and condition.

19. In the event of Total Loss of the Equipment, the Lessee will provide the Lessor with prompt written notice of such loss and will pay to the Lessor all unpaid Rent for the Term plus the Casualty Value of the Equipment, at which point ownership of the Equipment passes to the Lessee.

**Ownership, Right to Lease and Quiet Enjoyment**

20. The Equipment is the property of the Lessor and will remain the property of the Lessor until all the remaining payment due has been paid off.

21. The Lessee will not encumber the Equipment or allow the Equipment to be encumbered or pledge the Equipment as security in any manner.

22. The Lessor warrants that the Lessor has the right to lease the Equipment according to the terms in this Agreement.

23. The Lessor warrants that as long as no Event of Default has occurred, the Lessor will not disturb the Lessee's quiet and peaceful possession of the Equipment or the Lessee's unrestricted use of the Equipment for the purpose for which the Equipment was designed.



S.N

**Exhibit 5**

SAF-T

Insurance

24. The Lessee will, during the whole of the Term and for as long as the Lessee has possession of the Equipment, take out, maintain and pay for insurance against loss of and damage to the Equipment for the full replacement value of the Equipment and will name the Lessor as the loss payee.

25. The Lessee will, during the whole of the Term and for as long as the Lessee has possession of the Equipment, take out, maintain and pay for comprehensive general liability insurance against claims for bodily injury, including death, and property damage or loss arising out of the use of the Equipment. The insurance policy will have limits of at least $200,000.00.

26. The insurance will be in the joint name of the Lessor and the Lessee so that both the Lessor and the Lessee will be protected from liability and will provide primary and non-contributing coverage for the Lessor. The insurance policy will have a provision that it will not be modified or cancelled unless the insurer provides the Lessor with thirty (30) days written notice stating when such modification or cancellation will be effective.

27. Upon written demand by the Lessor, the Lessee will provide the Lessor with an original policy or certificate evidencing such insurance.

28. The Lessee appoints the Lessor as the Lessee's attorney-in-fact ("Attorney") with the power to maintain the above insurance and to secure payments arising out of any insurance policy required by this Agreement. The Attorney has the power to do all acts that are necessary or desirable to secure such payments.

29. If the Lessee fails to maintain and pay for such insurance, the Lessor may, but is not obligated to, obtain such insurance, but if the Lessor does obtain such insurance, the Lessee will pay to the Lessor the cost of such insurance upon notification from the Lessor of the amount.

Taxes

30. The Lessee will report and pay all taxes, fees and charges associated with the Equipment, with the use of the Equipment, and with revenues and profits arising out of the use of the Equipment, including, but not limited to, sales taxes, property taxes, and license and registration fees. The Lessee will pay any and all penalties and interest for failure to pay any tax, fee or charge on or



S.N

before the date on which the payment is due. The Lessee will pay any and all penalties and interest for failure to report required information to any taxing authority with jurisdiction over the Lessee or the Equipment. If the Lessee fails to do any of the foregoing, the Lessor may, but is not obligated to, do so at the Lessee's expense.

31. Notwithstanding any other provision of this Agreement, the Lessee will not be required to pay any tax, fee or charge if the Lessee is contesting the validity of same in the manner prescribed by the legislation governing the imposition of same, or in the absence of a prescribed form, in a reasonable manner. However, the Lessee will indemnify and reimburse the Lessor for damages and expenses incurred by the Lessor arising from or related to the Lessee's failure to pay any tax, fee or charge, regardless of whether the Lessee is contesting the validity of the same or not.

32. If the Lessee fails to pay any and all taxes, fees, and charges mentioned in this Agreement and the Lessor, on behalf of the Lessee, pays the same, the Lessee will reimburse the Lessor for the cost upon notification from the Lessor of the amount.

Indemnity

33. The Lessee will indemnify and hold harmless the Lessor against any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees and costs, arising out of or related to the Lessee's use of the Equipment.

Default

34. The occurrence of any one or more of the following events will constitute an event of default ("Event of Default") under this Agreement:

a. The Lessee fails to pay any amount provided for in this Agreement within ten days after same is due or otherwise breaches the Lessee's obligations under this Agreement.

b. The Lessee becomes insolvent or makes an assignment of rights or property for the benefit of creditors or files for or has bankruptcy proceedings instituted against it under the Federal bankruptcy law of the United States or another competent jurisdiction.

c. A writ of attachment or execution is levied on the Equipment and is not released or satisfied within 10 days.



S. N

Exhibit 5

**Remedies**

35. On the occurrence of an Event of Default, the Lessor will be entitled to pursue any one or more of the following remedies (the "Remedies"):

a. Declare the entire amount of the lease for the Term immediately due and payable without notice or demand to the Lessee.

b. Apply the Deposit toward any amount owing to the Lessor.

c. Commence legal proceedings to recover the payment due and other obligations accrued before and after the Event of Default.

d. Take possession of the Equipment, without demand or notice, wherever same may be located, without any court order or other process of law. The Lessee waives any and all damage occasioned by such taking of possession.

e. Terminate this Agreement immediately upon written notice to the Lessee.

f. Pursue any other remedy available in law or equity.

**Assignment**

36. THE LESSEE WILL NOT ASSIGN THIS AGREEMENT, THE LESSEE'S INTEREST IN THIS AGREEMENT OR THE LESSEE'S INTEREST IN THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE LESSOR.

37. If the Lessee assigns this Agreement, the Lessee's interest in this Agreement or the Lessee's interest in the Equipment without the prior written consent of the Lessor, the Lessor will have recourse to the Remedies and will be entitled to all damages caused by the transfer to the extent that the damages could not reasonably be prevented by the Lessor.

**Additional Documents**

38. Upon written demand by the Lessor, the Lessee will execute and deliver to the Lessor documents required by the Lessor to protect the Lessor's interest in the Equipment including, but not limited to, the documents necessary to file a UCC financing statement.



S.N

**Exhibit 5**

**Entire Agreement**

39. This Agreement will constitute the entire agreement between the Parties. Any prior understanding or representation of any kind preceding the date of this Agreement will not be binding on either Party except to the extent incorporated in this Agreement.

**Address for Notice**

40. Service of all notices under this Agreement will be delivered personally or sent by registered mail or courier to the following addresses:

Lessor: ______________________

Lessee: ______________________ 03/29/2023

**Interpretation**

41. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

**Governing Law**

42. It is the intention of the Parties to this Agreement that this Agreement and the performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the State of Texas (the "State"), without regard to the jurisdiction in which any action or special proceeding may be instituted.

**Severability**

43. If there is a conflict between any provision of this Agreement and the applicable legislation of the State of Texas (the "Act"), the Act will prevail and such provisions of the Agreement will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Agreement.

44. In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, those provisions to the extent enforceable and all other provisions will nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts

Exhibit 5

had not been included in this Agreement and the remaining provisions had been executed by both Parties subsequent to the expungement of the invalid provision.

<u>General Terms</u>

45. This Agreement may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

46. Time is of the essence in this Agreement.

47. This Agreement will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each Party to this Agreement.

48. Neither Party will be liable in damages or have the right to terminate this Agreement for any delay or default in performance if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions, wars, insurrections, natural disasters, such as earthquakes, hurricanes or floods and/or any other cause beyond the reasonable control of the Party whose performance is affected.

<u>Notice to Lessee</u>

49. **NOTICE TO THE LESSEE:** This is a lease to purchase. You are buying the Equipment. Do not sign this Agreement before you read it. You are entitled to a completed copy of this Agreement when you sign it.

**IN WITNESS WHEREOF**__________(Lessee) has duly affixed its signature under hand and seal and_____________(LESSOR) has affixed its signature by a duly authorized officer under seal on this _________day of_________________, _________

**Exhibit 5**

U dispatch your self. 8% dispatch fee

Insurance $275.00

Trailer $175.00

Misc $40.00

Plate <u>He will get</u> his own

m

Ball

**Exhibit 6**



# *CIRCLE STAR INSURANCE COMPANY,*

# *A RISK RETENTION GROUP*

## NON-TRUCKING LIABILITY DECLARATIONS

**NOTICE: THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP. YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE. STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.**

| | |
|---|---|
| **CIRCLE STAR INSURANCE COMPANY,**<br>**A RISK RETENTION GROUP**<br>**58 East View Lane, Suite 2**<br>**Barre, VT 05641** | **Agent Name and Address** |

**Item 1.**

**NAMED INSURED:** **Said Nuru**

MAILING ADDRESS: 500 N CENTRAL EXPY, SUITE 500, Plao, TX 75074

**POLICY PERIOD:** 12:01 A.M. standard time at the address of the Named **Insured** shown above.

**From** **03/30/2023** **Continuous until cancelled**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| | | | | | | |
|---|---|---|---|---|---|---|
| The Named **Insured** is: | ☒ | Individual | ☐ | Partnership | ☐ | Corporation |
| | ☐ | Joint Venture | ☐ | Other: | | |

**Item 2.** Schedule of coverages and **autos**. This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply to those **autos** shown as covered **autos**. **Autos** are shown as covered **autos** for a particular coverage by the entry of one or more of the symbols from **Item 3** next to the name of the Coverage.

| **Premium** | **Coverages** | **Limit of Liability** | **Deductible** |
|---|---|---|---|
| [redacted] | Bodily Injury / Property | $1,000,000 | N/A |
| Included | Un-Under Insured Motorist | See State Forms | N/A |
| Included | Medical Payments | See State Forms | N/A |
| [redacted] | **Total Premium** | | |

**Item 3.** Description of Covered **Auto** Designation

Only those **autos** described on the schedules issued to **you** which become part of this policy and for which a premium charge is shown on the schedules.

**Forms and Endorsements** applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule, STAR-NTL-FMS (05-20).

---

The coverage provided by this policy is limited and is subject to certain conditions. You should read the entire policy.

# Exhibit 6

## CONTINUOUS MONTHLY RENEWAL PLAN

This policy is amended as follows:

1. **Certificate Period:** continuous from the effective date 12:01 a.m. standard time and for successive monthly terms as provided below.

2. Subject to consent of this Company, and subject to the premiums, rules and forms then in effect for this Company, this policy may be continued in force by payment of the required monthly premium for each successive policy term. Such monthly premium must be paid to the Company prior to the expiration of the then current policy term; and if not so paid, the policy shall terminate.

All other provisions, conditions and exclusions of the policy not inconsistent herewith shall remain unchanged.

The estimated total premium for this policy is based on the exposure **you** told **us you** would have when this policy began. **We** will compute final premium due when **we** determine your actual exposures. The estimated total premium will be credited against the final premium due and **you** will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, **you** will get a refund. To determine **your** final premium due, **we** may examine **your** records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premiums shall be computed annually based on **our** rates or premiums in effect that the beginning of each year of the policy.

Authorized Signature: ______________________

Date: 03/30/2023

By: Alex Petrovich, Vice President - Head of Insurance and Risk

Exhibit 6



# *CIRCLE STAR INSURANCE COMPANY,*

# *A RISK RETENTION GROUP*

# NON-TRUCKING LIABILITY DECLARATIONS

**NOTICE: THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP. YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE. STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.**

---

Throughout this policy, the words **you** and **your** appear in **bold-faced type** and mean the person or organization shown as the **Named Insured** in Item One of the Declarations or in Item One of any applicable Certificate of Insurance.

The words **we**, **us**, and **our** also appear in **bold-faced type** and refer to the company providing this insurance. Other words and phrases that appear in **bold-faced type** throughout this policy have special meaning and are defined in **PART V – DEFINITIONS.**

The coverage provided by this policy is limited and is subject to certain conditions. You should read the entire policy. This policy expressly excludes coverage "while the covered **auto** is being used in the business of any **lessee** or while the covered **auto** is being used to transport cargo of any type." (See PART II, C. EXCLUSIONS, 13.)

---

## PART I – COVERED AUTOS

---

A. Item Two of the Declarations shows the **autos** that are covered for each of **your** coverages.

B. Owned Autos You Acquire After the Policy Begins

1. An **auto** you acquire will be a covered **auto** for liability only if:

   a. we already insure all **autos** you own for that coverage and it replaces an **auto** you previously owned that had coverage; and

      i. **you** tell us within 30 days after you acquire it that **you** want **us** to insure it for that coverage; or

      ii. the **auto** is a temporary substitute **auto** that you are renting or leasing for a period of 30 days or less while an **auto you** own is being serviced or repaired.

# Exhibit 6

## PART II – LIABILITY COVERAGE FOR NON-TRUCKING USE

**A. COVERAGE**

**We** will pay all sums an **insured** legally must pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

**We** have the right and duty to defend any **suit** asking for those **damages**. However, **we** have no duty to defend **suits** for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or **suite** as **we** consider appropriate. **Our** duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under B. COVERAGE EXTENSIONS, below.

**1.** WHO IS AN **INSURED**

Subject to Subpart 2 (below), the following are **insureds:**

**a.** **You**, for any covered **auto.**

**b.** Anyone else while using with **your** permission a covered **auto you** own, hire or borrow.

**c.** Anyone else who is liable for the conduct of an **insured** but only to the extent of that liability.

**2.** HOWEVER, NONE OF THE FOLLOWING IS AN **INSURED:**

**a.** Anyone engaged in the business of transporting property for hire.

**b.** Any rail, water or air carrier or its employees or agents, other than **you** and **your** employees, for a **trailer** if the **loss** occurs while the **trailer** is detached from a covered **auto you** are using and:

**(1)** is being transported by the carrier; or

**(2)** is being loaded on or unloaded from any unit of transportation by the carrier.

**B. COVERAGE EXTENSIONS**

**1.** Supplementary Payments. In addition to the Limit of Insurance, **we** will pay for the **Insured**:

**a.** All expenses **we** incur.

**b.** Up to $250 for the cost of all bail bonds (including bonds for related traffic law violations) required because of an **accident we** cover. **We** do not have to furnish these bonds.

**c.** The cost of bonds to release attachment in any **suit we** defend, but only for bond amounts within our Limit of Insurance.

**d.** All reasonable expenses incurred by the **insured** at **our** request, including actual loss of earnings up to $100 a day because of time off from work.

**e.** All court costs taxed against the **insured** in any **suit we** defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against an **insured**.

# Exhibit 6

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment in any **suit we** defend but **our** duty to pay interest ends when **we** have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

**g.** **We** will pay reasonable and customary expenses charged to the **Named Insured** for **Rescue Services**, up to a maximum of $1,000 for the sum of all such charges as the result of any one collision.

**2.** Minimum Conformance Provision

**a.** Any coverage legally deemed to be included in this policy, by reason of an applicable financial responsibility or insurance law or regulation of any state or government agency, shall not exceed the minimum limits required by such law or regulation.

**b.** If any provision of this Part II – Liability Converge for Non-Trucking Use is held to be void or unenforceable under the law of any jurisdiction, for any reason, including, but not limited to, violation of statute or contravention of public policy, **we** will not pay any sum in excess of the minimum amounts required by the financial responsibility laws of such jurisdiction, and then only after all other valid and collectable insurance available to **you** in the absence of this policy, has been exhausted.

**C. EXCLUSIONS**

This insurance does not apply to any of the following:

**1.** EXPECTED OR INTENDED INJURY

**Bodily injury** or **property damage** expected or intended from the standpoint of the **insured.**

**2.** CONTRACTUAL

Liability of another which you assume under any contract or agreement.

**3.** WORKERS' COMPENSATION

Any obligation for which the **insured** or the **insured's** insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4.** EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

**Bodily injury** to: any employee of the **insured**, or the spouse, child, parent, brother or sister of such employee, which occurs while such employee is acting within the course and scope of employment by the **insured**.

This exclusion applies:

**a.** Whether the **insured** may be liable as an employer or in any other capacity; and

**b.** To any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.

**5.** FELLOW EMPLOYEE

**Bodily injury** to any fellow employee of the **insured** arising out of and in the course of the fellow employee's employment.

**6.** CARE, CUSTODY OR CONTROL

**Property damage** to property owned or transported by the **insured** or in the **insured's** care, custody or control.

**Exhibit 6**

**7.** HANDLING OF PROPERTY

**Bodily injury** or **property damage** resulting from the handling of property:

**a.** before it is moved from the place where it is accepted by the **insured** for movement into or onto the covered **auto**; or

**b.** after it is moved from the covered **auto** to the place where it is finally delivered by the **insured.**

**8.** MOVEMENT OF PROPERTY BY MECHANICAL DEVICE

**Bodily injury** or **property damage** resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to a covered **auto.**

**9.** OPERATIONS

**Bodily Injury** or **property damage** arising out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of **mobile equipment.**

**10.** COMPLETED OPERATIONS

**Bodily injury** or **property damage** arising out of **your** work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** work or operations performed by **you** or on **your** behalf; and

**b.** materials, parts or equipment furnished in connection with such work or operations.

**Your** work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

**Your** work will be deemed complete at the earliest of the following times:

**a.** When all of the work called for in **your** contract has been completed.

**b.** When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site.

**c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.

**11.** POLLUTION

**a.** **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants**:

**(1)** That are, or that are contained in any property that is:

**(a)** being transported or towed by, or handled for movement into, onto or from, the covered **auto**;

**(b)** otherwise in the course of transit by the **insured**; or

**Exhibit 6**

(c) being stored, disposed of, treated, or processed in or upon the covered **auto;**

**(2)** before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the covered **auto**; or

**(3)** after the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where the yare finally delivered, disposed of or abandoned by the **insured.**

**b.** Any **loss**, cost or expense arising out of any governmental direction or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

Paragraph **a.(1)(c)** does not apply to fuel, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered **auto** or its parts if:

**(1)** the **pollutants** escape or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

**(2)** the **bodily injury** or **property damage** does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c** of the definition of **mobile equipment.**

Paragraphs **a.(2)** and **a.(3)** of this exclusion do not apply if:

**(a)** the **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the use of a covered **auto**; and

**(b)** the discharge, dispersal, release or escape of the **pollutant** is caused directly by such upset, overturn or damage.

**12.** WAR

**Bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, or revolution.

**13.** TRUCKING OR BUSINESS USE

**Bodily injury** or **property damage** arising out of any **accident** which occurs while the covered **auto** is being used in the business of any **lessee** or while the covered **auto** is being used to transport cargo of any type. For the purposes of this exclusion the phrase "in the business of any **lessee**" means any of the following uses of the covered **auto**:

**a.** for the benefit of or to further the interest of any **lessee** or when conducting business of any type;

**b.** by any person or organization acting within the scope of employment by any **lessee**;

**c.** by any person or organization acting under the direction, control or dispatch of any **lessee**;

**d.** while travelling to or from any location for the purpose of picking up, delivering or transporting cargo on behalf of any **lessee**; or

**e.** while travelling between any location where the covered **auto** is **regularly garaged** and

i. any terminal or facility of any **lessee**, or

ii. any other location,

**Exhibit 6**

for the purpose of picking up, delivering or transporting any cargo; or

**f.** while traveling from:

**(1)** any terminal or facility of any **lessee**, or

**(2)** any location at which the covered **auto** was present for the purpose of picking up, delivering or transporting cargo,

to any location where the covered **auto** is **regularly garaged**.

**14.** FRAUDULENT OR DISHONEST ACTS

**Bodily injury** or **property damage** caused by any intentional, illegal, fraudulent, or dishonest act or omission of any:

**a.** **insured;**

**b.** driver or operator under contract or lease to any **insured**;

**c.** member of an **insured's** household;

**d.** person in an **insured's** service or employment; or

**e.** person or organization for the act or omission of which an **insured** may be liable.

**15.** Punitive Damages

Punitive or exemplary damages, fines, penalties, court-imposed monetary sanctions, or any other sum awarded to punish or deter conduct or misconduct.

**16.** RACING

**Bodily injury** or **property damage** while a covered **auto** is being used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered **auto** is being prepared for such a contest or activity.

**17.** PARADES

**Bodily Injury** or **property** damage while the covered **auto** is participating in a parade, exhibition, demonstration, or show.

---

**PART III – UNINSURED/UNDERINSURED MOTORIST COVERAGE, PERSONAL INJURY PROTECTION (NO FAULT) AND MEDICAL PAYMENTS (MEDPAY) COVERAGE**

---

**1.** Uninsured/Underinsured Motorist Coverage, Personal Injury Protection (No-Fault) Coverage and Medical Payments (MedPay) Coverage.

Each and every exclusion which appears in Part II – Liability Coverage for Non-Trucking Use shall apply to any Uninsured/Underinsured Motorist Coverage, Personal Injury Protection (No-Fault) Coverage and Medical Payments Coverage.

**Exhibit 6**

**PART IV – COMMON POLICY CONDITIONS**

**A. LOSS CONDITION**

**1.** Duties in the event of **accident**, claim, **suit** or **loss**

**a.** In the event of **accident**, claim, **suit** or **loss**, **you** must give **us** or **our** authorized representative immediate notice of the **accident** or **loss** regardless of fault or severity. Include:

**(1)** how, when and where the **accident** or **loss** occurred;

**(2)** the **insured's** name and address; and

**(3)** to the extent possible, the names and addresses of any injured persons and witnesses.

**a.** Additionally, **you** and any other involved **insured** must:

**(1)** Assume no obligation, make no payment or incur no expense without **our** consent, except at the **insured's** own cost.

**(2)** Immediately send **us** copies of any demand, notice, summons or legal paper received concerning the claim or **suit**.

**(3)** Cooperate with **us** in the investigation, settlement or defense of the claim or **suit**.

**(4)** Authorize **us** to obtain medical records or other pertinent information.

**(5)** Submit to examination at **our** expense, by physicians of **our** choice, as often as **we** reasonably require.

**2.** LEGAL ACTION AGAINST **US**

No one may bring a legal action against **us** under this policy until:

**a.** there has been full compliance with all the terms of this policy; and

**b.** under Liability Coverage, **we** agree in writing that the **insured** has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring **us** into an action to determine the **insured's** liability.

**3. OUR** RIGHT TO RECOVER FROM OTHERS

If **we** make any payment, **we** are entitled to recover what **we** paid from other parties. Any person to or for whom **we** make payment must transfer to **us** his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

**B. GENERAL CONDITIONS**

**1.** BANKRUPTCY

Bankruptcy or insolvency of the **insured** or the **insured's** estate will not relieve **us** of any obligation under this policy.

# Exhibit 6

**2.** CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy shall be void if **you** or an **insured** has concealed or otherwise misrepresented any material fact, or in case of any fraud or attempted fraud regarding any matter addressed by this policy, its application and any endorsements, whether before or after a **loss**.

**3.** REPRESENTATIONS

By accepting this policy, **you** agree:

**a.** The statements in the Declarations and Certificate of Insurance are accurate and complete;

**b.** Those statements are based upon representations **you** made to **us**; and

**c.** **We** have issued this policy in reliance upon **your** representations.

**4.** CHANGES

This policy contains all the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**. If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of change. If **we** revised this policy form to provide more coverage without additional coverage premium charge, **your** policy will automatically provide the additional coverage as of the date the revision is effective in **your** state.

**5.** OTHER INSURANCE

**a.** For any covered **auto**, the insurance provided by this policy is excess over any other collectible insurance, whether that other insurance is described as excess, contributing, contingent, or otherwise. However, when the covered **auto** is a **trailer** which is connected to another vehicle, the liability coverage this policy provides for that **trailer** is:

**(1)** Excess while it is connected to a motor vehicle **you** do not own.

**(2)** Primary while it is connected to a covered **auto** you own.

**b.** When this policy and any other Coverage Form, policy or **self-insurance** covers on the same basis, either excess or primary, **we** will pay only **our** share of the covered **loss**. **Our** share is the proportion that the Limit of Insurance of our policy bears to the total of the applicable limits of all the Coverage Forms, policies or **self-insurance** covering on the same basis.

**c.** This condition **5.** does not apply to other insurance that is specifically issued to apply only in excess of this applicable limit of this policy.

**6.** POLICY PERIOD, COVERAGE TERRITORY

This insurance applies only to covered **accidents** and **loss** that occur both:

**a.** within the policy period shown in the Declarations or Certificate of Insurance; and

**b.** within the coverage territory. The coverage territory, for PART II – LIABILITY COVERAGE FOR NON-TRUCKING USE & PART III – UNINSURED/UNDERINSURED MOTORIST COVERAGE, PERSONAL INJURY PROTECTION (NO FAULT) AND MEDICAL PAYMENTS (MEDPAY) COVERAGE, is:

**(1)** the United States of America;

**(2)** the territories and possessions of the United States of America;

**(3)** Puerto Rico

# Exhibit 6

While a covered **auto** is being transported directly between any places listed in **(1)** through **(3)**, the coverage territory includes the place where the covered **auto** is when an **accident** or **loss** occurs.

**7.** TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

If this policy and any other Coverage form or policy issued to you by **us** or any company affiliated with **us** apply to the same **accident**, the aggregate maximum Limit of Insurance under all Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does to apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.

**8.** NO ABANDONMENT

**You** may not abandon any covered **auto** or damaged property to **us**.

**9.** CANCELLATION

**a.** The first **Named Insured** shown in the Declarations or Certificate of Insurance may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

**b.** **We** may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if **we** cancel for any other reason

**c.** **We** will mail or deliver **our** notice to the first **Named Insured's** last mailing address known to **us**.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, **you** may be entitled to a premium refund. If so, **we** will send **you** the refund. However, making or offering to make the refund is not a condition of cancellation. if **you** cancel, the refund, if any, will be computed in accordance with the customary short rate procedure. If **we** cancel, the refund, if any, will be computed pro rata.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**g.** If this provision, or any part of it, should be declared invalid or in conflict with the laws of any state, such language shall be interpreted to conform to such legal authority, but this will not affect the validity of such provision in any other jurisdictions and will not affect the validity or enforceability of any other provision of this policy.

**10.** INSPECTIONS AND SURVEYS

**We** have the right but are not obligated to:

**a.** make inspections and surveys at any time;

**b.** give **you** reports on the conditions **we** find; and

**c.** recommend changes

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And **we** do not warrant that conditions:

**(1)** are safe or healthful; or

**Exhibit 6**

**(2)** comply with laws, regulations, codes, or standards.

This condition applies not only to **us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**11.** PREMIUMS

The first **Named Insured** shown in the Declarations or Certificate of Insurance:

**a.** is responsible for the payment of all premiums; and

**b.** will be the payee for any return premiums **we** pay.

**12.** TRANSFER OF **YOUR** RIGHTS AND DUTIES UNDER THIS POLICY

**Your** rights and duties under this policy may not be transferred without **our** written consent except in the case of death of an individual **Named Insured**. If **you** die, **your** rights and duties will be transferred to **your** legal representative. Until **your** legal representative is appointed, anyone having proper temporary custody of **your** property will have **your** rights and duties but only with respect to that property.

**13.** LIMIT OF INSURANCE – LIABILITY COVERAGE FOR NON-TRUCKING USE

Regardless of the number of covered **autos**, **insureds**, premiums paid, claims made, suits brought, or persons or organizations making claims or bringing suits, or the number of vehicles involved in an **accident**, the most **we** will pay under PART II – LIABILITY COVERAGE FOR NON-TRUCKING USE for the sum of all **damages** resulting from any one **accident** is the Limit of Insurance for Liability Coverage shown in the Schedule of Autos, Item Two of the Declamations or Item Two of the Certificate of Insurance.

All **bodily injury** and **property damage** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **accident**.

**Our** Limit of Insurance shall be applied for the benefit of those entitled to protection in the following order:

**a.** The first **Named Insured**.

**b.** Executive officers, directors, stockholders, partners or employees of the first **Named Insured**.

**c.** Additional **insureds** named by endorsement, and

**d.** Other **insureds**.

**15.** LOSS PREVENTION SERVICES

At **our** cost, **we** may provide or recommend a broad range of loss prevention services designed to improve the acceptability of an **insured**. These services may require **your** cooperation to make them effective. **We** provide these services based on need as indicated by size, hazard and experience of **your** operation. **We** may elect to provide these services through another entity. In addition to inspections and surveys referenced in **11. INSPECTIONS AND SURVEYS**, these services may include, but are not limited to, safety and prevention training, consultations, safety devices, health screenings and analyses of accident causes. **We** are not obligated to provide any loss prevention services and any inspections, surveys, reports or recommendations and any such actions **we** do undertake relate only to insurability and the premiums to be charged. **We** do not make safety inspections. **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And **we** do not warrant that conditions:

And **we** do not warrant that conditions:

**a.** are safe or healthful; or

**b.** comply with laws, regulations, codes or standards.

Exhibit 6

## PART V – DEFINITIONS

**A.** **Accident** means an event that is unexpected and unintended from the standpoint of the **insured**. All continuous or repeated accidental exposure to substantially the same generally harmful conditions shall be deemed one and the same **accident**.

**B.** **Auto** means a land motor vehicle, **trailer**, or semi-trailer designed for travel on public roads but does not include **mobile equipment.**

**C.** **Bodily injury** means physical injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** **Damages** means money damages, demanded or awarded to compensate for harm. **Damages** does not include punitive or exemplary damages, fine, penalty, monetary sanction, disgorgement or restitution of money or property, or cost of complying with equitable relief.

**E.** **Insured** means the **Named Insured** and any person or organization qualifying as an **insured** in the "Who is an **Insured**" provision of the applicable coverage. Except with respect to the Limit of Insurance and any rights or duties specifically assigned to the Named **Insured**, the coverage afforded applies separately to each **insured** who incurs **loss** or against whom a claim is made or **suit** is brought.

**F.** **Lessee** means any person or organization to whom a covered **auto** is leased, rented or loaned. However, **lessee** does not include any of the following:

**1.** **you**;

**2.** if **you** are an individual, any business or organization in which **you**, **your** spouse, any one or more of **your** relatives, or any one or more members of **your** household, has any ownership interest;

**3.** if **you** are not an individual, any business or organization in which **you**, or any one or more of **your** shareholders, members, owners, officers, directors, or employees, has any ownership interest.

**G.** **Loss** means direct and accidental loss or damage.

**H.** **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises **you** own or rent;

**3.** Vehicles that travel on crawler treads

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** power cranes, shovels, loaders, diggers or drills; or

**b.** road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraphs **1.**, **2**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

# Exhibit 6

**b.** cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered **autos**:

**a.** Equipment designed primarily for:

**(1)** snow removal;

**(2)** road maintenance, but not construction or resurfacing; or

**(2)** street cleaning

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**I.** **Named insured**, **you** or **your** mean the person or organization shown as the "**Named Insured**" in Item One of the Declarations or in Item One of an applicable Certificate of Insurance.

**J.** **Pollutants** means any solid, liquid, gaseous, radioactive or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

Waste includes materials to be recycled, reconditioned or reclaimed.

**K.** **Property damage** means damage to or destruction of tangible property, including resulting loss of use of that tangible property.

**L.** **Regularly garaged** means parked or stored on a regular basis, whether indoors or outdoors.

**M.** **Rescue Services** means those services rendered by a Fire Department, Ambulance, EMS or Police Department in connection with an accident involving the **Named Insured**.

**N.** **Self-insurance** means any plan of risk retention in which a program, plan, or procedure, other than insurance, has been established to deal with an adverse risk.

**O.** **Suit** means a civil proceeding alleging **damages** because of **bodily injury** or **property damage** to which this insurance applies. **Suit** includes an arbitration proceeding alleging such **damages** to which **you** must submit or do submit with **our** consent.

**P.** **Trailer** includes a semi-trailer or a dolly used to convert a semi-trailer into a **trailer**.

**Exhibit 6**



# SCHEDULE OF FORMS AND ENDORSEMENTS

| FORM NUMBER | SCHEDULE OF COVERAGE FORMS |
|---|---|
| STAR-NTL-DS (05-20) | Non-Trucking Liability Declarations |
| STAR-NTL-CVG (05-20) | Non-Trucking Liability Coverage Form |
| STAR-NTL-FMS (05-20) | Schedule of Forms and Endorsements |
| STAR-NTL-SCH (05-20) | Schedule of Covered Autos You Own |
| STAR-NTL-LAI (05-20) | Lendor – Additional Insured |
| STAR-NTL-TXUM (05-20) | Texas Uninsured/Underinsured Motorists Coverage |
| STAR-NTL-TXNF (05-20) | Texas Personal Injury Protection Endorsement |

# Exhibit 6



# SCHEDULE OF COVERED AUTOS YOU OWN

DESCRIPTION, TERRITORY, CLASSIFICATION, and COVERAGES ON AUTOS YOU OWN, including additions, changes and deletions.

For Limits of Liability or deductibles applicable to each coverage ("COVERAGES") not shown on this Schedule, see attached endorsement(s).

| | | | |
|---|---|---|---|
| **Unit Number:** | ELFY4654 | **Loss Payee / Lease Provider:** | null |
| **Description:** | 2014 Freightliner | **VIN:** | 1FUJGLD63ELFY4654 |
| **Stated Amount:** | $26,000 | | |
| **Garaged Location ST-Zip Territory:** | TX 75215 | | |
| **Date Vehicle Added:** | 03/30/2023 | **Date Vehicle Deleted:** | 03/29/2024 |

| Coverages | Limits | Deductibles | Premiums |
|---|---|---|---|
| Bodily Injury / Property | $1,000,000 | N/A | [redacted] |
| Un-Under Insured Motorist | See State Forms | N/A | |
| Medical Payments | See State Forms | N/A | |
| **Total Premium** | | | |

Exhibit 6



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED

This endorsement applies to the insurance provided under the following:

NON-TRUCKING LIABILITY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**SCHEDULE**

**Name of Person(s) or Organization(s)**

**VIN: 1FUJGLD63ELFY4654** **Person(s) or Organization(s):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Exhibit 6**

POLICY NUMBER: **NTL300449-14799**

**NON-TRUCKING LIABILITY**
**STAR-NTL-TXUM (05-20)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS UNINSURED/UNDERINSURED MOTORISTS COVERAGE

For a "covered auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

NON-TRUCKING LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:** Said Nuru

**Endorsement Effective Date:** 03/30/2023

**SCHEDULE**

| | |
|---|---|
| **Limit Of Insurance** | |
| **$ 85,000** | **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured" or "property damage" caused by an "accident". The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".
2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:
   - **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or
   - **b.** A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph d. of the definition of "uninsured motor vehicle", and we:
     - **(1)** Have been given prompt written notice of such tentative settlement; and
     - **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us. If we and the Named Insured do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue will be on us.

# Exhibit 6

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are insureds:

**a.** The Named Insured and any "family member".

**b.** Any other person "occupying" a "covered auto".

**c.** Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **a.** or **b.** above.

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** The Named Insured for "property damage" only.

**b.** Any person "occupying" a "covered auto".

**c.** Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **b.** above.

**C. Exclusions**

**1.** We do not provide Uninsured/Underinsured Motorists Insurance:

**a.** For "bodily injury" sustained by:

**(1)** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this Coverage Form;

**(2)** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this Coverage Form; or

**(3)** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured/Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**b.** For any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

**c.** For any person for the first $250 of the amount of damage to the property of that person as the result of any one "accident".

**d.** For the use of a vehicle without a reasonable belief that the person using the vehicle is entitled to do so. This exclusion does not apply to an individual Named Insured or a "family member" while using a "covered auto".

**e.** For any person for "bodily injury" or "property damage" resulting from the intentional acts of that person.

**2.** This coverage shall not apply directly or indirectly to benefit:

**a.** Any insurer or self-insurer under any workers' compensation, disability or similar law.

**b.** Any insurer of property.

**D. Limit Of Insurance**

**1.** Regardless of the number of "covered autos", "insureds", policies or bonds applicable, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured/Underinsured Motorists Coverage shown in the Schedule or Declarations. Subject to this maximum, our limit of liability will be the lesser of:

**a.** The difference between the amount of a covered "insured's" damages for "bodily injury" or "property damage" and the amount paid or payable to that covered "insured" for such damages, by or on behalf of persons or organizations who may be legally responsible; or

**b.** The applicable limit of liability for this coverage.

**2.** In order to avoid insurance benefits payments in excess of actual damages sustained, subject to only the limits set out in the Schedule or Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any:

**a.** Workers' compensation, disability benefits or similar law;

**b.** Automobile Medical Payments Coverage; or

**c.** Personal Injury Protection Coverage.

**3.** Any payment under this coverage to or for an "insured" will reduce any amount that "insured" is entitled to recover for the same damages under this Policy's Covered Autos Liability Coverage.

**Exhibit 6**

**4. Special Provisions For Property Damage**

For any "property damage" "loss" to which the Physical Damage Coverage of this Policy (or similar coverage from another policy) and this coverage both apply, the Named Insured may choose the coverage from which damages will be paid. Such Named Insured may recover under both coverages, but only if:

**a.** Neither one by itself is sufficient to cover the "loss";

**b.** The Named Insured pays the higher deductible amount (but the Named Insured does not have to pay both deductibles); and

**c.** The Named Insured will not recover more than the actual damages.

**E. Changes In Conditions**

The conditions of the Policy are changed for Uninsured/Underinsured Motorists Insurance as follows:

**1.** The reference in the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form to "other collectible insurance" is replaced by the following:

If there is other applicable similar insurance, we will pay only our share of the "loss". Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible insurance.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved.

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** Take reasonable steps after "loss" to protect the "covered auto" and its equipment from further "loss". We will pay all reasonable expenses incurred to do this.

**d.** Permit us to inspect and appraise the damaged property before its repair or disposal.

**e.** Promptly notify us in writing of a tentative settlement between an "insured" and the insurer of the vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights under this provision do not apply with respect to a tentative settlement between an "insured" and the insurer of an owner or operator of a vehicle described in Paragraph d. of the definition of "uninsured motor vehicle" if we:

**a.** Have been given written notice of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount an "insured" is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

**b.** We also have the right to recover the advanced payment.

**Exhibit 6**

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding. However, at any time prior to the arbitrators' decision, either party may revoke the agreement to arbitrate the matter.

**F. Additional Definitions**

The following are added to the **Definitions** section and have special meaning for Uninsured/Underinsured Motorists Insurance:

**1.** "Covered auto" means an "auto":

**a.** Owned or leased by the Named Insured; or

**b.** While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, "loss" or destruction.

Covered Autos Liability Coverage of this Policy must apply to the "covered auto".

"Covered auto" includes "autos" (described in **a.** or **b.** above) for which Uninsured/Underinsured Motorists Insurance has not been rejected in writing.

**2.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Property damage" means injury to or "loss" of use or destruction of:

**a.** A "covered auto";

**b.** Property owned by the Named Insured or any "family member" of an individual Named Insured while contained in a "covered auto";

**c.** Property owned by any other person "occupying" the "covered auto" while contained in the "covered auto"; and

**d.** Any property owned by the Named Insured or "family member" of an individual Named Insured while contained in any "auto" not owned, but being operated, by such individual Named Insured or any "family member" of the individual Named Insured.

**5.** "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

**a.** To which no liability bond or policy applies at the time of the "accident".

**b.** Which is a hit-and-run vehicle whose operator or owner cannot be identified. The vehicle must hit an "insured", a "covered auto" or a vehicle an "insured" is "occupying".

**c.** To which a liability bond or policy applies at the time of the "accident", but the bonding or insuring company denies coverage or is or becomes insolvent.

**d.** Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident, but its limit of liability either:

**(1)** Is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages; or

**(2)** Has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**a.** Owned by or furnished or available for the regular use of the Named Insured or a "family member" of an individual Named Insured;

**Exhibit 6**

**b.** Owned or operated by a self-insurer under an applicable motor vehicle law;

**c.** Owned by any governmental body unless the operator of the vehicle is uninsured and there is no statute imposing liability for damage because of "bodily injury" or "property damage" on the governmental body for an amount not less than the Limit of Insurance for this coverage;

**d.** Operated on rails or crawler treads;

**e.** Designed mainly for use off public roads while not on public roads; and

**f.** While located for use as a residence or premises.

**Exhibit 6**

POLICY NUMBER: **NTL300449-14799**

**NON-TRUCKING LIABILITY**
**STAR-NTL-TXNF (05-20)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" registered or principally garaged in, or "auto dealer operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

NON-TRUCKING LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:** **Said Nuru**

**Endorsement Effective Date:** **03/30/2023**

**SCHEDULE**

| Limit Of Insurance (Each Insured) | Premium |
|---|---|
| **$ 2,500** | **$ Included** |
| **$** | **$** |
| **$** | **$** |
| **$** | **$** |

**Description Of Covered Autos** (Check appropriate box.):

- [ ] Any "auto" owned by you
- [ ] Any private passenger "auto" owned by you
- [ ] Any motor vehicle to which are attached dealer's license plates issued to you
- [X] Any motor vehicle designated in the Declarations of the policy by Medical Payments and a motor vehicle the
ownership of which is acquired during the policy period by you as a replacement therefor

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

We will pay Personal Injury Protection benefits because of "bodily injury" resulting from a motor vehicle "accident" and sustained by a person "insured". Our payment will only be for "losses" or expenses incurred within three years from the date of the "accident".

Personal Injury Protection benefits consist of:

**1.** Necessary expenses for medical and funeral services.

**2.** 80% of an "insured's" loss of income from employment. These benefits apply only if, at the time of the "accident", the "insured":

**a.** Was an income producer; and

# Exhibit 6

**b.** Was in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

Loss of income is the difference between:

**a.** Income which would have been earned had the "insured" not been injured; and

**b.** The amount of income actually received from employment during the period of disability.

If the income being earned as of the date of the "accident" is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period (not more than 12 months) preceding the "accident" shall be used.

**3.** Reasonable expenses incurred for obtaining services. These services must replace those an "insured" would normally have performed:

**a.** Without pay;

**b.** During a period of disability; and

**c.** For the care and maintenance of the family or household.

These benefits apply only if, at the time of the "accident", the "insured":

**a.** Was not an income producer; and

**b.** Was not in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

**B. Who Is An Insured**

**1.** You or any "family member" while "occupying" or when struck by any "auto".

**2.** Anyone else "occupying" a "covered auto" with your permission.

**C. Exclusions**

We will not provide Personal Injury Protection Coverage for any person for "bodily injury" sustained:

**1.** In an "accident" caused intentionally by that person.

**2.** By that person while in the commission of a felony.

**3.** By that person while attempting to elude arrest by a law enforcement official.

**4.** While "occupying" or when struck by, any motor vehicle (other than a "covered auto") which is owned by you.

**5.** By a "family member" while "occupying" or when struck by any motor vehicle (other than a "covered auto") which is owned by a "family member".

**D. Limit Of Insurance**

Regardless of the number of owned "covered autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" in any one "accident" is the limit of Personal Injury Protection shown in the Schedule or in the Declarations.

**E. Changes In Conditions**

The Conditions of the policy are changed for Personal Injury Protection as follows:

**1.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

However, our rights only apply against a person causing or contributing to the "accident" if, on the date of the "loss", the minimum limits required by Texas law have not been established for a motor vehicle involved in the "accident" and operated by that person.

**2.** The reference in the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form to "other collectible insurance" is replaced by the following:

If there is other Personal Injury Protection Insurance, we will pay only our share. Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible Personal Injury Protection Insurance.

**3.** The following conditions are added:

**a. Payment Provision**

Loss Payments benefits are payable:

**(1)** Not more frequently than every two weeks; and

**(1)** Within 30 days after satisfactory proof of claim is received.

**b. Assignment Of Benefits**

Payments for medical benefits will be paid directly to a physician or other health care provider if we receive a written assignment signed by the covered person to whom such benefits are payable.

# Exhibit 6

**F. Additional Definitions**

The following are added to the **Definitions** section and have special meaning for Personal Injury Protection:

**1.** "Covered auto" means an "auto":

**a.** Owned or leased by you; or

**b.** While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, "loss" or destruction.

Covered Autos Liability Coverage of this policy must apply to the "covered auto".

"Covered auto" includes "autos" (described in Paragraphs **a.** and **b.** above) for which Personal Injury Protection Coverage has not been rejected in writing.

**2.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off.

# Exhibit 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CIRCLE STAR INSURANCE COMPANY, A RISK RETENTION GROUP,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **SAID NURU, SAF-T TRANSPORTATION, INC., ALEXIS MARTINEZ, JOANNE COZZOLINO, GARRISON PROPERTY & CASUALTY INSURANCE COMPANY,** | § | **CIV. ACTION NO. 3:26-CV-7-N** |
| **Defendants.** | § | |

**DECLARATION OF MARGARET MAYHUGH**

In accordance with 28 U.S.C. 1746, I, Margaret Mayhugh, submit this Unsworn Declaration.

1. "My name is Margaret Mayhugh. My date of birth is 12/25/1985, and my business is located at 2200 Abbott Dr. Carter Lake, IA 51510.

2. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct. Such facts were gained in my capacity as Liability Claims Manager for Circle Star Insurance Company, a Risk Retention Group (hereinafter "Circle Star").

3. I am familiar with the manner in which Circle Star's records are created and maintained by virtue of my job duties and responsibilities. The policy referenced herein is kept by Circle Star in the regular course of business, and it was the regular course of business of Circle Star for an employee or representative of Circle Star, with knowledge of the act or event that was recorded in said records, to make the records and/or to transmit the information to be included in these records. All entries into the records were made at or near the time of the act or event, recorded therein or reasonably soon thereafter. The record attached to this declaration is an excerpt from the original or an exact duplicate of the original document.

**Exhibit 7**

4. Circle Star issued non-trucking liability insurance policy bearing policy number NTL300449-14799 to Said Nuru for the policy period from March 30, 2023 through March 30, 2024. The Motion for Summary Judgment attaches a true and correct copy of this Policy.

5. Circle Star is providing Said Nuru a defense in the consolidated action captioned *Alexis Martinez v. Said Nuru, Saf-T Transportation Inc., and Bismillah Load, Inc.,* Cause No. DC-24-06763, pending in the 134th Judicial District Court of Dallas County, Texas.

6. I declare under penalty of perjury that the forgoing is true and correct.

Executed on 14th of September, 2026.